UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBORAH WALTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:21-cv-00365-JPH-TAB |
| | ) |
| BMO HARRIS BANK N.A., | ) |
| EQUIFAX INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Deborah Walton, brought this action *pro se* alleging that Defendant BMO Harris failed to correct or explain charges it applied on her home equity line of credit. Dkt. 42. BMO Harris has filed a motion to dismiss, arguing that she did not dispute the charges in time. Dkt. [50]. Because Ms. Walton's complaint shows that her dispute came too late, BMO Harris's motion is **GRANTED**.

I.
Facts and Background

Because BMO Harris has moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

In 2006, Ms. Walton opened a home equity line of credit ("HELOC") with First Indiana Bank. Dkt. 42 at 2. BMO Harris acquired the HELOC by 2016, and "made changes" to it "without any disclosures" to Ms. Walton. *Id.* BMO Harris then "failed to apply her monthly payments while assessing late fees at

1

the same time." *Id.* at 2, 4. When Ms. Walton received her April 2016 statement, she realized that "late fees were being assessed on her monthly statements" despite her timely payments. *Id.* at 4. She disputed the charges within 60 days of receiving that statement. *Id.* Ms. Walton then sued BMO Harris (a separate suit, prior to this one), and the court entered summary judgment in favor of BMO Harris in August 2018. *Id.* at 2–3 (citing 1:16-cv-3302-WTL-DML (affirmed in *Walton v. BMO Harris Bank N.A.*, 761 Fed. App'x 589 (7th Cir. 2019)).

After that suit, on April 30, 2019, BMO Harris sent Ms. Walton a letter explaining that it "discovered that one or more of [her] payments was applied to late charges and/or other fees before the principal balance," resulting in it "charg[ing] her too much interest because [her] principal balance was higher than it should have been." Dkt. 42-1 at 8; *see* dkt. 42 at 3.[1] The letter promised that BMO Harris would "reapply [her] payment(s)" and "credit [her] account the overpaid interest." Dkt. 42-1 at 8. Then, on May 1, 2019, BMO Harris sent Ms. Walton a letter saying that it "stopped sending monthly statements on [her] account in February 2017, after several months of non-payment." *Id.* at 16. That letter listed a "current outstanding balance" of $68,263. *Id.*

---

[1] Ms. Walton attached to her complaint the relevant communications between herself and BMO Harris. The Court considers them because they "are central to the complaint and referred to in it." *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020).

On September 28, 2020, BMO Harris sent Ms. Walton a letter requesting payment of $68,263.17 that it claimed she owed on the HELOC.  Dkt. 42-1 at 11–12.  Ms. Walton disputed that debt on October 10, 2020, alleging that "BMO Harris Bank did not apply my payments to the principal balance of the loan."  Dkt. 42-1 at 13.  After Ms. Walton sent that letter, BMO Harris reported adverse information to the credit reporting agencies Experian, TransUnion, and Equifax.  Dkt. 42 at 4.

Ms. Walton brought this action *pro se* in February 2021 against BMO Harris, Experian, TransUnion, and Equifax.  Dkt. 1; dkt. 42.  BMO Harris has moved to dismiss the only count against it—an alleged violation of the Fair Credit Billing Act ("FCBA").  Dkt. 50; *see* dkt. 42 at 4.

## II.
## Applicable Law

Defendants may move under Federal Rule of Civil Procedure 12(b)(1) to dismiss claims for lack of subject-matter jurisdiction, and under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief may be granted."  When faced with a 12(b)(1) motion, the plaintiff "bears the burden of establishing that the jurisdictional requirements have been met."  *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under both 12(b)(1) and 12(b)(6), the Court accepts as true the well-pleaded factual allegations, drawing all reasonable inferences in the plaintiff's favor. *Burwell*, 770 F.3d at 588–89; *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

### III.
### Analysis

Ms. Walton's sole claim against BMO Harris alleges that it failed to "investigate and correct or explain" a billing error in response to her October 2020 dispute notice, as required by the FCBA. Dkt. 42 at 4. BMO Harris has moved to dismiss the claim for lack of standing and for failure to state a claim. Dkt. 50.

#### A.     Standing

BMO Harris argues that Ms. Walton lacks standing—and therefore the Court lacks jurisdiction—because she has "failed to plead facts establishing that she suffered a concrete, particularized injury." Dkt. 51 at 5–7. Ms. Walton responds that the statutory violation is enough. Dkt. 52 at 5–6.

After the parties filed their briefs, the Supreme Court again "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). So to have standing, Ms. Walton must have alleged a harm—

independent of her alleged statutory violation—that is "sufficiently concrete to qualify as an injury in fact." *Id.* at 2204.

Ms. Walton alleges that BMO Harris "furnished" "inaccurate information" to the credit-reporting agencies, causing the loss of credit and credit denials. Dkt. 42 at 4. She also has presented evidence that when BMO Harris "reported [her] account as being in default," another creditor closed her account "due to the negative reporting." Dkt. 42-1 at 10 (Walton aff.). That is a concrete injury supporting standing. *See Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 345 (7th Cir. 2018) (holding that "the risk of financial harm" from "credit reporting agencies lowering their credit score" is enough for Article III standing).

BMO Harris does not challenge Ms. Walton's allegations or the veracity of her affidavit, but argues that her injury was caused by the credit reporting agencies and is not "fairly traceable" to BMO Harris. Dkt. 51 at 6 (citing *Spokeo*, 578 U.S. at 338); *see Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press.").[2] While the credit reporting agencies reported Ms. Walton's default, they would not have done so if BMO Harris had not told them

---

[2] BMO Harris also argues that the Seventh Circuit has "affirmed [that Ms. Walton] did not" suffer a concrete injury. Dkt. 53 at 3. This appears to refer to the Seventh Circuit's holding—in an appeal from a separate case—that summary judgment had been properly entered against Ms. Walton because she did not designate evidence supporting the element of damages for a claim against Equifax. *Walton v. BMO Harris Bank N.A.*, 761 Fed. App'x 589, 591 (7th Cir. 2019). BMO Harris has not explained why that appeal affects this issue, which involves factual allegations from after that appeal was decided. *See* dkt. 42 at 4; dkt. 42-1 at 10.

5

that Ms. Walton had defaulted. *See* dkt. 42 at 4. That's enough to fairly trace Ms. Walton's alleged injury to BMO Harris, so Ms. Walton has established standing, at least for this stage of the case. *See Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016) (explaining that alleging "but-for" causation is enough for standing); *Ramirez*, 141 S. Ct. at 2208 ("A plaintiff must demonstrate standing with the manner and degree of evidence required at the successive stages of the litigation.").

### B.    Fair Credit Billing Act claim

Ms. Walton alleges that the payment-allocation errors that BMO Harris recognized in its April 30, 2019 letter were not fixed in a September 28, 2020 collection letter. Dkt. 42 at 4; dkt. 42-1 at 8–15. She therefore sent a letter to BMO Harris on October 10, 2020 "putting [it] on notice that [she was] disputing the debt referenced in [the September 28, 2020] letter." Dkt. 42 at 4; dkt. 42-1 at 8–15. She alleges that BMO Harris failed to timely respond to that dispute letter in violation of the FCBA's requirement that creditors promptly address alleged billing errors. Dkt. 42 at 4.[3]

Ms. Walton relies on 15 U.S.C. § 1666(a)—a "primary provision" of the FCBA—which applies when a creditor sends a statement of account "in connection with an extension of consumer credit." *American Express Co v. Koerner*, 452 U.S. 233, 234–37 (1981) (explaining 15 U.S.C. § 1666(a)). BMO Harris argues that Ms. Walton's amended complaint fails to state a claim

---

[3] BMO Harris initially misunderstood these allegations, *see* dkt. 51, but by its reply brief understood that Ms. Walton's amended complaint was alleging a billing error in the September 28, 2020 letter, *see* dkt. 53.

6

because the September 28, 2020 collection letter was not a "periodic billing statement" as required to trigger its FCBA obligations. Dkt. 53 at 4–6.

15 U.S.C. § 1666's implementing regulation—"Regulation Z"—specifies that, to trigger the FCBA's obligations, a notice of billing error must be "received by the creditor . . . no later than sixty days after the creditor transmitted the first periodic statement that reflects the alleged billing error." 12 C.F.R. § 226.13; *Nguyen v. USAA Fed. Savings Bank*, No. 1:07-cv-202-LJM-JMS, 2008 WL 2945616 at \*3 (S.D. Ind. July 28, 2008); *Dawkins v. Sears Roebuck & Co.*, 109 F.3d 241, 243 (5th Cir. 1997). Here, Ms. Walton's amended complaint alleges that the error began "with the periodic statement with a closing date of April 2016." Dkt. 42 at 3. Her October 10, 2020 letter therefore falls far outside Regulation Z's sixty-day deadline for raising a billing error and triggering BMO Harris's FCBA obligations. *See Nguyen*, 2008 WL 2945616 at \*5 ("[O]nly a timely notice of a billing error will trigger a creditor's obligations under [the] FCBA."); *Dawkins*, 109 F.3d at 243. In fact, Ms. Walton admitted in her October 10, 2020 letter that she had "disputed this [error] with your Bank over a year ago." Dkt. 42-1 at 13.[4]

Ms. Walton has therefore pleaded "herself out of court by alleging facts that show she has no legal claim." *Sabrina Roppo v. Travelers Comm. Ins. Co.*,

---

[4] The Court therefore does not decide whether BMO Harris's September 28, 2020 collection letter was a "statement of the obligor's account" under § 1666 because, even if it was one, Ms. Walton's dispute came too long after the first periodic statement with the alleged error. Similarly, the Court does not address BMO Harris's arguments that the statute of limitations and res judicata also bar Ms. Walton's claims. *See* dkt. 51 at 9–14; dkt. 53 at 8–10.

869 F.3d 568, 591 (7th Cir. 2017); *see Williamson v. Curran*, 714 F.3d 432, 448 (7th Cir. 2013).

## IV.
## Conclusion

BMO Harris's motion to dismiss is **GRANTED**; Count 1 is **DISMISSED with prejudice** and the **clerk shall terminate** BMO Harris Bank N.A. from the docket.  Dkt. [50].  Ms. Walton **shall file** a status update regarding her claim against Equifax Inc. **by March 4, 2022**.

**SO ORDERED.**

Date: 2/1/2022

        *James Patrick Hanlon*
        James Patrick Hanlon
        United States District Judge
        Southern District of Indiana

Distribution:

DEBORAH WALTON
P.O. Box 292
Carmel, IN 46082

Jacob V. Bradley
QUARLES & BRADY LLP (Indianapolis)
jacob.bradley@quarles.com

Lucy Renee Dollens
QUARLES & BRADY LLP (Indianapolis)
lucy.dollens@quarles.com